SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
    A Limited Liability Partnership
    Including Professional Corporations
MICHAEL H. AHRENS, Cal. Bar No. 44766
ORI KATZ, Cal. Bar No. 209561
MICHAEL M. LAUTER, Cal Bar No. 246048
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone:    415-434-9100
Facsimile:    415-434-3947

Attorneys for the OFFICIAL COMMITTEE OF
UNSECURED CREDITORS OF WILLIAM JAMES
DEL BIAGGIO, III

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re | Case No. 08-30991 TEC 11 |
| WILLIAM JAMES DEL BIAGGIO, III, | Chapter 11 |
| Debtor. | **FIRST MONTHLY REPORT PURSUANT TO INFORMATION ACCESS PROTOCOL** |

Case: 08-30991   Doc# 215   Filed: 11/04/08   Entered: 11/04/08 16:09:19   Page 1 of 21

# I. INTRODUCTORY STATEMENT

This *First Monthly Report Pursuant to Information Access Protocol* (the "Report") is made pursuant to the *Order Approving the Official Committee of Unsecured Creditors' Information Access Protocol* (the "Information Order") entered by the United States Bankruptcy Court of the Northern District of California, San Francisco Division (this "Court") on October 16, 2008 as docket #189 in the above-captioned bankruptcy case (this "Bankruptcy Case"). This Report constitutes the reasonable best efforts of the Official Committee of Unsecured Creditors in this Bankruptcy Case (the "Committee") to provide current non-confidential and non-privileged information to its creditor constituency. The investigation into the facts and circumstances concerning this Bankruptcy Case is ongoing and subject to change. This is especially but not exclusively true with respect to information regarding the debtor's assets and liabilities. In addition, pursuant to the Information Order, the Committee is entitled to refrain from including confidential and privileged information in this Report, so as not to hinder any of the efforts of the Committee or the chapter 11 trustee (the "Trustee") currently underway with respect to the sale of assets of William James "Boots" Del Biaggio, III (the "Debtor") or otherwise that may require confidentiality or privileged discussion or analysis. Further, any court dates listed herein are subject to being changed or postponed by the parties or the Court, and should be verified in advance by any party seeking to rely upon them. Finally, any summary of legal arguments, documents or statements filed with the Court that may be contained herein are only summaries, and not meant as a replacement for an independent review of the underlying pleadings or transcripts. Parties are encouraged to refer to those underlying pleadings and transcripts to the extent that they are interested in or concerned about such arguments, documents or statements filed with the Court.

W02-WEST:5MML1\401106714.5

Case: 08-30991   Doc# 215   Filed: 11/04/08   Entered: 11/04/08 16:09:19   Page 2 of 21

## II. GENERAL INFORMATION AND HIGHLIGHTS OF SIGNIFICANT EVENTS IN THIS BANKRUPTCY CASE

A.      Bankruptcy Filing of the Debtor and Related Entities.

The Debtor commenced this Bankruptcy Case by filing a voluntary petition under chapter 11 of the Bankruptcy Code on June 6, 2008. The Debtor is represented by Michael St. James, Esq. in this Bankruptcy Case. The Debtor is an individual residing in San Jose, CA who kept an office at 3000 Sand Hill Road, Building 1, Suite 240, Menlo Park, California. The Debtor was involved in many different business dealings. He also acted on behalf of the 1999 Del Biaggio Family Trust (the "Del Biaggio Family Trust") as co-trustee of same along with his wife Kristen Del Biaggio. In addition, he held positions at certain entities, including without limitation the following: BDB Management LLC ("BDB I"), BDB Management III, LLC ("BDB III") and Sand Hill Capital Partners III, LLC ("Sand Hill III"). The operating agreements for BDB I and BDB III each show the Debtor as the Managing Member of the applicable limited liability company. Based on the proof of claim filed by Sand Hill III in this Bankruptcy Case, the Debtor was the manager and sole member of Sand Hill III.

The Debtor also filed voluntary petitions under chapter 11 of the Bankruptcy Code for BDB I and BDB III on June 7, 2008, and a voluntary petition under chapter 7 of the Bankruptcy Code for Sand Hill III on June 5, 2008. The bankruptcy cases of the Debtor, BDB I, BDB III and Sand Hill III are all pending in the United States Bankruptcy Court for the Northern Disrict of California, San Francisco Division, in front of Hon. Thomas E. Carlson, United States Bankruptcy Judge. The Debtor's case, as noted in the caption above, is Case No. 08-30991. The cases of BDB I and BDB III are Case Nos. 08-31001 and 08-31002, respectively. Sand Hill III's case is Case No. 08-30989. Parties interested in learning more information about the BDB I, BDB III and Sand Hill III cases should review the Court's files or contact counsel for the court-appointed trustees in those cases.

Precipitating the bankruptcy filings by the Debtor, BDB I, BDB III and Sand Hill III were five pre-petition fraud suits filed in state court against, variously, the Debtor, BDB I, BDB III, Sand Hill III, the investment house of Merriman Curhan Ford & Co. ("Merriman") and D. Scott Cacchione, a business associate of the Debtor's who was employed at Merriman. Four such fraud suits have been filed post-petition, such that nine are now pending. Eight of the nine lawsuits allege that the Debtor, Mr. Cacchione and Merriman worked together to misrepresent the Debtor's assets so that he could obtain loans from various sources in order to purchase, among other things, an interest in the Nashville Predators franchise in the National Hockey League.

B.    Highlights of Significant Events in this Bankruptcy Case.

1.    *Order Extending Dischargeability Deadlines.*

On June 13, 2008, the Court issued an order indefinitely extending the deadlines for objecting to the discharge of the Debtor set forth in Bankruptcy Code sections 523 and 727, made applicable to this Bankruptcy Case by Bankruptcy Code section 1141(d)(3). No discharge-related deadline may now become effective without at least 120 days' notice to all creditors. No new discharge-related deadline has been noticed as of the date of this Report.

2.    *Orders Appointing Trustee and Committee and Orders Approving Estate Professionals.*

On June 26, 2008, the Court entered an order approving R. Todd Neilson as the Trustee in this Bankruptcy Case. The Court also entered orders approving Mr. Neilson as the chapter 11 trustee for the BDB I and BDB III cases on the same day. Mr. Neilson selected Pachulski, Stang, Ziehl, Young & Jones LLP ("Pachulski") to be his counsel in all three cases. Pachulski's employment application was approved by this Court in all three cases by orders entered on August 29, 2008. The Trustee also chose LECG LLC ("LECG") to be his accounting firm in all three cases. LECG's employment application was approved by this Court in all three cases by orders entered on August 29, 2009.

On June 27, 2008, the United States Trustee appointed the Committee, which is constituted of nine members: AEG Facilities; Don Arata; DGB Investments, Inc.; F. Ronald Laupheimer TTEE 401(k) PSP; Martha E. San Filippo Foundation; Modern Bank, N.A.; Security Pacific Bank; United American Bank; and Valley Community Bank. The Committee chose Sheppard, Mullin, Richter & Hampton LLP ("Sheppard Mullin") as its counsel. Sheppard Mullin's employment application was approved by this Court by an order entered on August 25, 2005.

    3.   *First Status Conference Held on August 1, 2008.*

On August 1, 2008, the first status conference in this Bankruptcy Case was held. At the status conference, Mr. Fiero gave an update to the Court on what he had learned in the cases of the Debtor, BDB I and BDB III. Mr. St. James also made a short statement on behalf of the Debtor to the effect that the Debtor is cooperating and will continue to cooperate with the Trustee to maximize the return to creditors.

    4.   *Committee's Motion re Information Access Protocol.*

Also on August 1, 2008, the Committee filed its Motion for Order (1) Confirming That the Official Committee of Unsecured Creditors Is Not Authorized or Required to Provide Access to Confidential or Privileged Information; and (2) Approving Information Access Protocol as docket #132. This motion sought to define the Committee's responsibilities to its constituent creditors under Bankruptcy Code section 1102(b)(3), which states generally that the Committee will provide creditors with access to information and will solicit comments from creditors. In particular, the Committee requested that the Court not require it to provide access to confidential or privileged information, for fear of impairing the ability of the Committee and the Trustee to share information with one another and work together to investigate the Debtor's assets and liabilities, sell such assets, and maximize the return to creditors. Five objections were filed to the motion. The Committee worked with the objecting parties to narrow the relief requested, and after a hearing in this Court on October 6, 2008, the Court entered the Information Order mentioned above. Monthly reports will be issued by the Committee on

Case: 08-30991   Doc# 215   Filed: 11/04/08   Entered: 11/04/08 16:09:19   Page 5 of 21

the fourth day of each month, and the Committee will be available to respond to questions and written requests for information at the contact information listed in Section VII below. Paragraph 9 of the Information Order provides that, with certain limitations, "Neither the Trustee, the Committee, the Committee Members nor any of their respective directors, officers, employees, members, attorneys, consultants, advisors or agents (acting in such capacity) (collectively, the 'Exculpated Parties'), shall have or incur any liability to any Entity (including the Debtor and its affiliates) for any act taken or omitted to be taken in connection with the preparation, dissemination, or implementation of the Information Access Protocol."

5. *341 Meeting of Creditors*.

An initial meeting of creditors as contemplated under Bankruptcy Code section 341 was originally scheduled by the U.S. Trustee for July 8, 2008. The Debtor did not appear at that meeting and it was continued until September 16, 2008. At that continued meeting, the Debtor did appear, with both his bankruptcy counsel and criminal counsel present. The Debtor invoked his Fifth Amendment rights in response to all questions except for those involving his name, address and Social Security Number. The meeting has been continued until December 2, 2008 for the purpose of furnishing evidence of his Social Security Number. The meeting will be held at the Office of the United States Trustee in San Francisco, the address of which is provided in Section IV below.

6. *Motions for Relief from Stay*.

Six motions for relief from stay have been filed so far in this Bankruptcy Case. Two were filed by Daimler Trust to repossess two of the Debtor's Mercedes automobiles. The Trustee and the Committee did not oppose the motions because there was no equity in the automobiles. The motions were granted by orders of the Court entered on July 18, 2008 and October 8, 2008 as docket #s 116 and 182, respectively.

Craig Leipold filed a motion for relief from stay on August 29, 2008 to foreclose alleged liens on two securities accounts held by the Debtor at Merriman. The motion asserts that Mr. Leipold, the former owner of the Nashville Predators, made a loan

Case: 08-30991   Doc# 215   Filed: 11/04/08   Entered: 11/04/08 16:09:19   Page 6 of
21

in the amount of $10,000,000 to the Debtor in connection with the purchase of the Debtor's interest in the Nashville Predators. The Debtor's obligation to Mr. Leipold is asserted to be evidenced by a promissory note that had accrued $591,643.84 in interest and other charges as of the petition date. The motion asserts that the Debtor executed a control agreement granting Mr. Leipold a security interest in the contents of certain accounts at Merriman. The motion asserts that the contents of the two accounts for which stay relief is sought amount to $1,198,839.56. The hearing on this motion has been continued by agreement of the parties to November 21, 2008.

United American Bank ("UAB") has also filed a motion for relief from stay to collect on a securities account in the Debtor's name at Merriman. In UAB's motion, which was filed on October 20, 2008, UAB asserts that it made a loan to the Debtor on November 18, 2004 in the amount of $1,750,000, which was evidenced by a promissory note and secured by the pledge of the contents of an account at Merriman. The security interest in the account was allegedly perfected by the filing of a UCC-1 financing statement on September 26, 2006. The motion alleges that the value of the contents of the account is approximately $708,650. The hearing on the motion is set for November 21, 2008.

Washington Mutual Bank ("Washington Mutual") filed a motion for relief from stay on October 27, 2008, seeking to foreclose on the Debtor's family residence located at 20801 Scenic Vista Drive, San Jose, CA. Washington Mutual has a first deed of trust on the property securing a debt of $2.3 million. There is also a junior deed of trust on the property in favor of UAB in the approximate amount of $662,500. Using a website to arrive at what it asserts to be comparable sales data, Washington Mutual alleges the property to be worth $1.1 million, such that there is no equity in the property for the Debtor's estate. The Trustee's brokers, however, have listed it at $4.5 million, at which price there would be equity for the estate. The hearing on Washington Mutual's motion is set for December 1, 2008.

Case: 08-30991   Doc# 215   Filed: 11/04/08   Entered: 11/04/08 16:09:19   Page 7 of 21

Finally, Bank of America NA ("BofA") filed a motion for relief from stay on November 3, 2008 seeking to foreclose on the property located at 127 Hollister Avenue, Santa Monica, CA. BofA asserts that, as successor-in-interest to Washington Mutual, it holds a first priority deed of trust on this property securing an obligation of $2,387,685.00. BofA also asserts the property's value to be $1,300,000.00 based on what it alleges to be comparable sales data obtained from a website. The Trustee's brokers have listed the property for sale at $3,395,000.00. A hearing on BofA's motion is currently set for November 17, 2008 at 9:30 a.m., though it may be continued. So far neither the Trustee nor the Committee has taken a position on any of the above motions for relief from stay, which are set for hearing at the times and places listed in Section IV below.

7.    *Adversary Proceedings*.

As of the date of this Report, two adversary proceedings have been filed in this Bankruptcy Case. The first, Case No. 08-03084, was filed on August 15, 2008 by the Trustee against Lee H. Brandenburg, both in his personal capacity and in his capacity as Trustee for the Brandenburg Revocable Trust Dated September 19, 1993 ("Brandenburg"). The complaint seeks the avoidance and recovery of approximately $3.8 million of allegedly preferential transfers made by the Debtor to Brandenburg within 90 days before the Debtor's bankruptcy filing. Brandenburg filed an answer to the complaint on September 15, 2008 generally denying the key allegations in the complaint and asserting four affirmative defenses: (i) the transfers were in the ordinary course of business; (ii) the transfers were made pursuant to a restructured debt agreement that was made in the ordinary course of business; (iii) the Debtor's unclean hands bar recovery by the Trustee; and (iv) the complaint fails to state a claim upon which relief can be granted. The parties filed a discovery plan on October 13, 2008, and have a hearing pending for November 10, 2008 at 9:15 a.m. on the appropriateness of alternate dispute resolution mechanisms.

The second adversary case, Case No. 08-03096, was filed by Luc Robitaille on September 15, 2008 against the Debtor. The complaint asserts that Mr. Robitaille and the Debtor had been business partners, and that each executed a promissory note in the

stated amount of $2,000,000 on December 22, 2006 in favor of Pacific Capital Bank, N.A. securing a line of credit at said bank. The complaint asserts that the Debtor then had the Bank wire the $2,000,000 to the account of Sand Hill III without Mr. Robitaille's knowledge or consent. The complaint asserts that Mr. Robitaille did not own any interest in Sand Hill III, and so received no benefit from said transfer. The complaint thus seeks $2,000,000 plus costs and attorneys' fees from the estate both on a theory of equitable contribution and unjust enrichment, and also seeks a declaration that the debt owed by the Debtor to Mr. Robitaille is nondischargeable. The Debtor's answer was due on October 16, 2008, but was not filed. A status conference on this matter is currently scheduled to be held on November 20, 2008 at 10:00 a.m., though the Committee understands that this status conference is likely to be continued.

       8.    *Motions to Convert and Requests for Election in BDB I and BDB III Cases.*

       In the BDB I and BDB III cases, a group of creditors including Lee H. Brandenburg and certain family members and related trusts (the "Brandenburg Group") have filed motions to convert the bankruptcy cases of BDB I and BDB III to chapter 7, and have requested the election of a separate trustee for the BDB I and BDB III cases than for this Bankruptcy Case. Currently, R. Todd Neilson is the chapter 11 trustee in all three cases.

       The Brandenburg Group filed the motions to convert on June 27, 2008. To summarize, the Brandenburg Group argued that the BDB I and BDB III cases should be converted to chapter 7 because there was no possibility of reorganizing the entities such that remaining in chapter 11 will only diminish the value of the estates' assets and because the Trustee possessed an alleged conflict of interest in his representation of the Debtor's estate on the one hand and the BDB I and BDB III estates on the other. An initial hearing on the motion was set for August 18, 2008. Prior to that hearing, the Trustee filed an opposition which in the main stated that it was too early to tell whether conversion was appropriate because the Trustee needed to first conduct an investigation into the assets and liabilities in the BDB I and BDB III estates. In the meantime, the Trustee argued,

maintaining only one trustee for the three cases would keep costs down for the estates by both reducing administrative costs and avoiding litigation between the estates over the ownership of assets. The Committee in this Bankruptcy Case filed a short joinder agreeing with the Trustee that was too early to tell whether conversion was appropriate and that the best course for the moment was to keep costs down. Another group of creditors filed a joinder agreeing with the Brandenburg Group, arguing that conversion was appropriate. At the August 18, 2008 hearing, the Court agreed that it was too early to tell whether conversion was appropriate and ordered the hearing on the motions to convert to be continued until a later date. A hearing is set on the motions to convert for November 21, 2008.

Although a separate motion for substantive consolidation of the BDB I and BDB III estates with the Debtor's estate has not been made, the issue has been raised before the Court in the context of the briefing and arguments on the motions to convert. Consolidation would merge the estates and pool the recoveries of the creditors of the estates. To the extent that one estate may contain more assets than another, the recovery of the creditors of that asset-possessing estate would be diluted by consolidation. The Court announced on August 18, 2008 that no motion seeking substantive consolidation could be filed without prior leave of Court.

The Brandenburg Group also filed requests for the election of a new trustee in the BDB I and BDB III cases, again alleging conflicts between the BDB estates and the Debtor's estate. The U.S. Trustee has scheduled an election for November 6, 2008 at 10:00 a.m. at the offices of the U.S. Trustee in San Francisco, and it is expected that it will be continued to a date in early December, 2008.

9.     *Claims Bar Date*.

The bar date for filing proofs of claim (except for governmental entities) passed on October 6, 2008. It is the normal process in a chapter 11 case for the Trustee and Committee to focus on the assets of the case before focusing on the claims filed. Thus, the focus of the Trustee and Committee has thus far been on gathering as much

Case: 08-30991   Doc# 215   Filed: 11/04/08   Entered: 11/04/08 16:09:19   Page 10 of 21

1  information as possible about the assets of the Debtor so as to form an accurate picture of

2  what may be obtained to distribute to unsecured creditors.  However, the Trustee and the

3  Committee have begun to review the claims filed as well.  In all, 138 claims were filed in

4  this Bankruptcy Case.  It should be noted that the stated amounts for each claim listed on

5  the claims register or on the face of the proofs of claim are not determinative of the final,

6  allowed amount of the claims, and are subject to proof, amendment, withdrawal or

7  disallowance, as appropriate.

8  **III.  SUMMARY OF RECENT PROCEEDINGS, EVENTS AND FINANCIAL**

9  **INFORMATION**

10  The above discussion of significant events in the case also encompasses a

11  summary of recent proceedings and events in the case.  This section will thus focus on

12  financial information.

13  A.  Brief Overview of Assets and Liabilities.

14  The schedules filed by the Debtor on June 23, 2008 indicate total assets of

15  $53,869,057.70 and total liabilities of $88,435,604.00.  The most recent operating report

16  filed by the Trustee, that for the month ending 7/31/08, indicated total assets of

17  $49,017.051 and total liabilities of $88,454,504.[1]  However, the bar date for the filing of

18  non-governmental proofs of claim passed subsequent to the filing of such operating report.

19  As noted above, it is impossible to determine the full amount of the claims without full

20  review of the claims and their underlying bases, but the total amount appears to be higher

21  than the total liabilities listed in the schedules and operating report.  The extent and

22  validity of these and the other proofs of claim is currently being analyzed by the Trustee

23  and Committee.  A list of the filed claims as of the date hereof is attached to this Report as

24  Exhibit A.  Said list shows the stated amount of claims entered on the claims register in

25  this Bankruptcy Case.  These amounts are not determinative of the final, allowed amount

26

27  [1] The Committee understands that monthly operating reports for the months of August and
   September of 2008 will be filed by the Trustee later this week.

28

Case: 08-30991   Doc# 215   Filed: 11/04/08   Entered: 11/04/08 16:09:19   Page 11 of
21

of the claims, and are subject to proof, amendment, withdrawal or disallowance, as appropriate.

B.     <u>Detail Regarding Significant Assets</u>.

    1.     *The Nashville Predators*.

    A potentially valuable asset held by the Debtor's estate is his share of a Series A preferred interest in the Nashville Predators franchise of the National Hockey League. The Trustee has analyzed this asset and is currently exploring various alternatives, including a sale.

    2.     *Real Property Holdings*.

    a.     <u>The Debtor's Personal and Family Residences</u>.

    The Debtor possesses various interests in residential real property. First, the Debtor possesses a residence located at 20801 Scenic Vista Drive, San Jose, CA. The Court has approved the application of the Trustee to employ brokers for this property. This property was purchased for $3.4 million in 2004, carries an alleged secured debt of approximately $2,962,500. The brokers initially listed the property for $4.5 million. As noted above, Washington Mutual has filed a motion for relief from stay to foreclose on this property.

    Second, the Debtor owns another residence located at 7263 Glenview Drive in San Jose, CA. This property was purchased for $2.45 million in 2007 and carries an alleged secured debt to Washington Mutual of approximately $1,956,000.

    Third, The Debtor owns a condominium in the Lake Tahoe area at 400 Squaw Creek Road (850/852), Olympic Valley, CA. This property was purchased for $2.2 million and carries an alleged secured debt of approximately $1.375 million. The Trustee sought and gained court approval to employ brokers for this property. The brokers initially listed this property for $1,799,000.

    b.     <u>The Debtor's Investment-Oriented Interests in Real Property</u>.

    The Debtor's investment-oriented real property interests are held indirectly, mainly through his interest in MB Real Estate Holdings, LLC ("MB Real Estate") and

BDB Fund I, L.P., a California limited partnership ("BDB Fund I").  MB Real Estate acquired a residence located at 127 Hollister Avenue, Santa Monica, CA.  The Trustee has obtained Court approval to employ brokers for this property.  The property carries an alleged secured debt of approximately $2,387,685.00 and is listed for $3,395,000.00.  As noted above, BofA has filed a motion for relief from stay seeking to foreclose on this proeprty.

The Debtor also has investment interests in real property through BDB Fund I.  BDB Fund I has mainly invested in three projects.  First, it has invested in a condominium project in San Jose known as Axis, which consists of 329 units.  Second, BDB Fund I also appears to have invested approximately $4.2 million in an office park project in the Los Angeles area known as Oak Creek Park.  Third, BDB Fund I appears to have invested $1 million in a project near San Jose known as Coyote Valley.  The Trustee is currently investigating the nature of the Debtor's interest in these projects and exploring related alternatives.

      3.    *Bank Accounts*.

According to the most recent operating report, the Debtor has approximately $660,307 in a checking account with Modern Bank, $1,264 in a checking account with United American Bank, $365,467 in a money market account with Union Bank of California, and $4,840 in a checking account with Union Bank of California.

      4.    *Limited Liability Company and Limited Partnership Interests*.

      a.    <u>BDB I</u>.

Approximately $10 million overall was invested into BDB I, which in turn purchased shares of stock in Heritage Bank of Commerce ("Heritage Bank") and St. Bernard Software, Inc. ("St. Bernard").  Of that total, approximately $2.9 million was invested by the Del Biaggio Family Trust.  The extent of BDB I's holdings and the Debtor's interest therein is currently being investigated by the Trustee.

Case: 08-30991   Doc# 215   Filed: 11/04/08   Entered: 11/04/08 16:09:19   Page 13 of 21

1            b.     <u>BDB II</u>.

2            Approximately $9 million overall was invested in BDB Management II, L.P.

3 ("BDB II") which has not filed for bankruptcy. BDB II in turn purchased shares of stock

4 in Onco Petroleum, Inc. ("Onco"). Of the total investment, approximately $2 million was

5 invested by the Debtor. The extent of BDB II's holdings and the Debtor's interest therein is

6 currently being investigated by the Trustee.

7            c.     <u>BDB III</u>.

8            Approximately $3 million overall was invested in BDB III, which in turn

9 purchased shares of stock in Pacific Premier Bank Corp. ("Pacific Premier"). Of that total,

10 the Del Biaggio Family Trust invested approximately $1 million. The extent of BDB III's

11 holdings and the Debtor's interest therein is currently being investigated by the Trustee.

12            d.     <u>The Sand Hill Group</u>.

13            There are various other investment entities by the name of "Sand Hill" in

14 which the Debtor may have an interest. These include Sand Hill Capital IV GP, LLC;

15 Sand Hill Capital IV, LP; Sand Hill Sakura Cayman Fund, LP; Sand Hill Sakura Fund, LP;

16 Sand Hill Sakura Management, LLC; Sand Hill Ventures, LLC; Sand Hill Venture Debt

17 III, LLC; and Sand Hill Venture Debt, LLC (collectively, the "Sand Hill Group"). The

18 Trustee is currently investigating the nature and extent of the Debtor's interests in these

19 entities.

20            BDB I, BDB II, BDB III and the Sand Hill Group entities have all filed

21 proofs of claim in this Bankruptcy Case.

22            e.     <u>Power Play Fund</u>.

23            Approximately $5 million was invested into Power Play Real Estate Fund,

24 L.P. ("Power Play Fund"), which in turn invested in certain real estate projects. Of the

25 total investment, $2 million was invested by the Debtor. The Debtor also claims to hold a

26 $2.5 million promissory note made by Power Play Fund for his benefit. The Trustee is

27 currently reviewing the extent of the Debtor's interest in Power Play Fund and the nature

28 of the projects in which Power Play Fund has invested.

1        5.     *Securities*.

2        As shown in the attachments to the Trustee's operating reports, the Debtor,

3 his IRA and the Del Biaggio Family Trust all have accounts at Merriman containing stock

4 in one or more of Heritage Bank, St. Bernard, and Pacific Premier.  However, the nature

5 and extent of the Debtor's interest in those accounts is currently being reviewed by the

6 Trustee.

7        In addition, the Debtor holds approximately 306,748 shares of stock in

8 Emerald Dairy, Inc. ("Emerald Dairy").  The Debtor's original investment in Emerald

9 Dairy stock was $650,000.  The Debtor's schedules also list the total value of the stock at

10 $12,000,000.  The Debtor also holds warrants of Emerald Dairy stock: one set of 306,748

11 shares with an exercise price of $3.26 per share and one set of 61,350 shares with an

12 exercise price of $2.04 per share.  The Trustee is currently investigating the value of the

13 Emerald Dairy stock and stock warrants and evaluating related alternatives.

14        6.     *Notes Receivable*.

15        The Debtor asserts that he is the holder of various notes receivable.  The

16 largest asserted note receivable is a promissory note in the purported amount of $2,500,000

17 made by Power Play Fund.  The Debtor also appears to be the holder of a promissory note

18 made by John Dunning in the stated amount of $1,000,000.  The Debtor also claims to

19 hold a promissory note from Scott Cacchione in the amount of $3,000,000.  The Trustee is

20 currently investigating the nature and extent of these note obligations owed to the Debtor.

21        7.     *Various Other Business Interests Not Included In This Review*.

22        The Debtor appears to have several other smaller assets, largely consisting of

23 smaller-scale business investments.  The Trustee is currently investigating the nature and

24 extent of these smaller assets, and exploring related alternatives.

25

26

27

28

W02-WEST:5MML1\401106714.5

Case: 08-30991   Doc# 215   Filed: 11/04/08   Entered: 11/04/08 16:09:19   Page 15 of 21

## IV. CALENDAR OF UPCOMING SIGNIFICANT EVENTS

## IN THIS BANKRUPTCY CASE

| Date and Time: | Description: | Place: |
|---|---|---|
| 11/6/2008 at 10:00 a.m. | Election of New Trustee in BDB I and BDB III Cases | Office of the U.S. Trustee 235 Pine Street, Suite 850 San Francisco, CA |
| 11/10/2008 at 9:15 a.m. | Alternative Dispute Resolution in Robitaille adversary proceeding, Case No. 08-03084 | U.S. Bankruptcy Court Hon. Thomas E. Carlson 235 Pine Street Courtroom 23 San Francisco, CA |
| 11/17/2008 at 9:30 a.m. | Hearing on Motion for Relief from Stay filed by BofA | Same court as above. |
| 11/20/2008 at 10:00 a.m. | Status Conference in Brandenburg Preference Adversary, Case No. 08-03096 | Same court as above. |
| 11/21/2008 at 11:00 a.m. | Hearing on Motions to Convert in BDB I and BDB III Cases | Same court as above. |
| 11/21/2008 at 11:00 a.m. | Hearing on Motion for Relief from Stay filed by Craig Leipold | Same court as above. |
| 11/21/2008 at 1:00 p.m. | Hearing on Motion for Relief from Stay filed by United American Bank | Same court as above. |
| 12/1/2008 at 1:00 p.m. | Hearing on Motion for Relief from Stay filed by Washington Mutual | Same court as above. |
| 12/2/2008 at 10:00 a.m. | Continued 341 Meeting of Creditors | Office of the U.S. Trustee 235 Pine Street, Suite 850 San Francisco, CA |

## V. COPIES OF PRESS RELEASES ISSUED BY COMMITTEE OR TRUSTEE

None.

## VI. ANSWERS TO FREQUENTLY ASKED QUESTIONS

No such questions yet.

Case: 08-30991   Doc# 215   Filed: 11/04/08   Entered: 11/04/08 16:09:19   Page 16 of 21

1

## VII. CONTACT INFORMATION FOR COMMITTEE COUNSEL

2          The creditors represented by the Committee are urged to submit their

3   questions or requests for information to counsel for the Committee at the following

4   address:

5                    Sheppard, Mullin, Richter & Hampton LLP
                     Four Embarcadero Center, 17th Floor
6                    San Francisco, CA 94111
                     Phone:  (415) 434-9100
7                    Fax:  (415) 434-3947
                     Attention: Michael H. Ahrens, Esq., or Michael M. Lauter, Esq.
8                    Email:  mahrens@sheppardmullin.com;
                     mlauter@sheppardmullin.com

9

10

11  Dated:  November 4, 2008

12                              SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

13
                                By      /s/ Michael M. Lauter
14                                       MICHAEL M. LAUTER

15                                  Attorneys for the OFFICIAL COMMITTEE OF
16                                  UNSECURED CREDITORS OF WILLIAM
                                    JAMES DEL BIAGGIO, III

17

18

19

20

21

22

23

24

25

26

27

28

Case: 08-30991   Doc# 215   Filed: 11/04/08   Entered: 11/04/08 16:09:19   Page 17 of 21

# EXHIBIT A

## List of Claims Filed in this Bankruptcy Case

| Claim No. | Creditor | Total Stated Claim |
|---|---|---|
| 1 | Gil Trevino and Oscar Trevino dba Trevino Brothers | $30,000.00 |
| 2 | Internal Revenue Service | $205,245.86 |
| 3 | Washington Mutual Bank | $2,302,309.58 |
| 4 | Washington Mutual Bank | $1,933,213.96 |
| 5 | Washington Mutual Bank | $2,354,430.00 |
| 6 | United American Bank | $1,746,214.53 |
| 7 | United American Bank | $664,351.36 |
| 8 | Stolar, Jeanne & Frederick | $250,000.00 |
| 9 | Harrah's Casino Hotel Lake Tahoe | $625,714.30 |
| 10 | Charles G. Peterson | $1,450,000.00 |
| 11 | Valley Community Bank | $4,236,142.10 |
| 12 | The Private Bank of the Peninsula | $923,541.63 |
| 13 | DeCosta, Verna M Trust | $100,000.00 |
| 14 | Cooley Godward Kronish LLP | $19,205.90 |
| 15 | Martha E. Sanfilippo Foundation | $3,099,166.67 |
| 16 | Saba, George and Dianne | $1,000,000.00 |
| 17 | Pacific Capital Bank, N.A. dba South Valley National Bank | $3,876,805.94 |
| 18 | Modern Bank, N.A. | $10,182,636.54 |
| 19 | David Hengehold | $526,148.88 |
| 20 | Bruce K. Powell, Trustee UTD May 7, 1981 | $50,000.00 |
| 21 | Christine K. Connor | $250,000.00 |
| 22 | David D. Connor | $750,000.00 |
| 23 | Debra A. Woolley Lee | $225,000.00 |
| 24 | Dolly W. Woolley | $225,000.00 |
| 25 | Donald W. Woolley | $225,000.00 |
| 26 | Donna P. Woolley | $100,000.00 |
| 27 | Douglas A. Lee | $225,000.00 |
| 28 | Janet M. De Carli, Successor Trustee UTD 9-26-84 | $100,000.00 |
| 29 | Jeanne M. Anderson | $75,000.00 |
| 30 | Kenneth S. Tersini, Trustee UTD October 9, 2000 | $500,000.00 |
| 31 | Mark E. & Terry S. Tersini, Trustees UTD 11-6-98 | $400,000.00 |
| 32 | Robert Peters, Trustee UTD 1-10-92 | $3,500,000.00 |
| 33 | Shannon K. Connor | $100,000.00 |
| 34 | Stephanie M. Connor | $200,000.00 |
| 35 | Tersini Family | $134,000,000.00 |
| 36 | Thomas C. Connor | $200,000.00 |
| 37 | Thomas C. Connor, Jr. | $100,000.00 |
| 38 | Sponholz, Richard E. | $750,000.00 |
| 39 | AEG Facilities Inc. | $7,264,163.00 |
| 40 | Kerzner International Resorts, Inc. | $477,750.19 |
| 41 | Heritage Bank of Commerce | $224,521.30 |
| 42 | Heritage Bank of Commerce | $4,949,671.70 |
| 43 | Andrew Arata c/o Don Arata | $200,000.00 |
| 44 | Eric And Christine Bachelor Children Trust | $419,575.00 |

W02-WEST:5MML1\401106714.5

| | | |
|---|---|---:|
| 45 | Barbara Perkins | $150,000.00 |
| 46 | Brothers Living Trust | $250,000.00 |
| 47 | Cesar M. Mayo Roth IRA | $200,000.00 |
| 48 | 2006 Cook Family Revocable Living Trust | $450,000.00 |
| 49 | Croesus Investments, LLC | $50,000.00 |
| 50 | Daniel Arata c/o Don Arata | $60,000.00 |
| 51 | Diana Pacheco c/o Don Arata | $10,000.00 |
| 52 | Economic Concepts, Inc. | $300,000.00 |
| 53 | Fat Cat International, a Nevada Corporation | $100,000.00 |
| 54 | Gary Thornhill, Trustee of the Thornhill | $200,000.00 |
| 55 | Southern California Edison Company | $40.33 |
| 56 | Don Arata | $1,005,000.00 |
| 57 | Michael W. and Barbara A. Kedell Family Trust | $560,000.00 |
| 58 | K-Fab, Inc. c/o Michael W. Kedell, President | $275,000.00 |
| 59 | F. Ronald Laupheimer, Trustee of the F. | $600,000.00 |
| 60 | Laura Bella Orlandi Gift Trust | $35,000.00 |
| 61 | Predators Holdings, LLC | $170,000,000.00 |
| 62 | Lindsay B. Orlandi Gift Trust | $35,000.00 |
| 63 | Lisa B. Orlandi Living Trust | $250,000.00 |
| 64 | Rene & Ramona Marasigan Trust | $175,000.00 |
| 65 | Mary Thornhill, Individually and as successor-in-interest to the Wirth 1984 Revocable Trust | $30,000.00 |
| 66 | Mayo Family Revocable Trust, Corazon G. | $100,000.00 |
| 67 | Michael Nicholas, c/o Irvine Nicholas | $50,000.00 |
| 68 | Michael Aymar & Lynn A. Aymar 1991 Family Trust | $150,000.00 |
| 69 | The Misser Irrevocable Trust | $225,000.00 |
| 70 | Nicholas Arata c/o Don Arata | $30,000.00 |
| 71 | Nicholas Family Ltd. Partnership | $100,000.00 |
| 72 | Patricia San Juan IRA | $100,000.00 |
| 73 | Peregrine Asset Group, LLC | $100,000.00 |
| 74 | Peter Silvani | $75,000.00 |
| 75 | Richard Alexander Orlandi Gift Trust | $20,000.00 |
| 76 | ROMO, LP | $100,000.00 |
| 77 | Santa Fe Trust, Inc. as Custodian for Paul Davis IRA | $100,000.00 |
| 78 | Susan Suttle Living Trust | $500,000.00 |
| 79 | Richard & Donna Wills Irrevocable Trust | $120,000.00 |
| 80 | Richard & Donna Wills Revocable Trust | $1,000,000.00 |
| 81 | WTB Limited Partnership | $300,000.00 |
| 82 | WTBA Profit Sharing Plan | $100,000.00 |
| 83 | WTKBJT, LLC | $200,000.00 |
| 84 | ECI Investment Advisors, Inc., DBPB | $250,000.00 |
| 85 | ECI Pension Services, LLC DBPP | $250,000.00 |
| 86 | Ward T. Bell | $500,000.00 |
| 87 | West Santa Clara Associates, LLC | $3,383,500.00 |
| 88 | Jack Peckham, et al. | $4,014,998.20 |
| 89 | The Sports Authority of Metro Nashville | $9,868,750.00 |
| 90 | American Hockey Group, LLC | $27,000.00 |
| 91 | Luc Robitaille | Unknown |
| 92 | CIT Lending Services Corporation | $40,000,000.00 |
| 93 | Security Pacific Bank | $5,116,220.43 |

Case: 08-30991   Doc# 215   Filed: 11/04/08   Entered: 11/04/08 16:09:19   Page 19 of 21

| | | |
|---|---|---|
| 94 | Janina M. Elder, Chapter 7 Trustee of the Estate of Sand Hill Capital Partners III, LLC | $24,788,844.97 |
| 95 | Craig L. Leipold | $10,591,643.00 |
| 96 | David Freeman | *Undetermined |
| 97 | Herbert Fritch | *Undetermined |
| 98 | Thomas and Christopher Cigarran | *Undetermined |
| 99 | Dewitt and John Thompson | *Undetermined |
| 100 | Taylor Ann Brandenburg | $50,000.00 |
| 101 | Brandenburg, Jackson Lee | $50,000.00 |
| 102 | Brandenburg, Brenton Lee | $25,000.00 |
| 103 | Kroerle, Diana Lee | $25,000.00 |
| 104 | Gary Brandenburg Revocable Trust | $150,000.00 |
| 105 | National Hockey League | Unliquidated |
| 106 | Kristen Del Biaggio | $2,701,752.00 |
| 107 | BDB Management II, LP | $9,425,000.00 |
| 108 | Zraick, Jr., Ronald | $325,000.00 |
| 109 | Brandenburg, Karen D. | $750,000.00 |
| 110 | The Shemano Group, Inc. | $200,000.00 |
| 111 | William Brandenburg Revocable Trust | $500,000.00 |
| 112 | Staedler, Rudy and Beverly Ann 1992 Revocable Trust | $1,606,000.00 |
| 113 | The Santucci Family Trust | $400,000.00 |
| 114 | Irving Bronstein | $600,000.00 |
| 115 | DiLeo, Joseph | $100,000.00 |
| 116 | Irving Bronstein and Christine Maria Taylor | $717,500.00 |
| 117 | Troy Bronstein | $153,750.00 |
| 118 | The Baron Family Rev Trust | $2,400,000.00 |
| 119 | Lee and Diane Brandenburg, individually and as trustees | $2,073,829.50 |
| 120 | DGB Investments, Inc. | $3,227,708.33 |
| 121 | Brandenburg, Eric, Trustee | $950,000.00 |
| 122 | Forecheck Investments, LLC | $250,000.00 |
| 123 | Members of BDB Management, LLC | $4,800,000.00 |
| 124 | Members of BDB Management III, LLC | $1,000,000.00 |
| 125 | BDB Management II, LP | Unliquidated |
| 126 | BDB Management, LLC | Unliquidated |
| 127 | BDB Management III, LLC | Unliquidated |
| 128 | First Pitch, LLC | $570,000.00 |
| 129 | Sand Hill Capital IV GP, LLC | $50,000.00 |
| 130 | Sand Hill Capital IV, LP | $50,000.00 |
| 131 | Sand Hill Sakura Cayman Fund, LP | $50,000.00 |
| 132 | Sand Hill Sakura Fund, LP | $50,000.00 |
| 133 | Sand Hill Sakura Management, LLC | $50,000.00 |
| 134 | Sand Hill Ventures, LLC | $50,000.00 |
| 135 | Sand Hill Venture Debt III, LLC | $50,000.00 |
| 136 | Sand Hill Venture Debt, LLC | $50,000.00 |
| 137 | Power Play Real Estate Fund, L.P. | $1,500,000.00 |
| 138 | Power Play Real Estate Management, LLC | $1,500,000.00 |

*The proofs of claim for claim numbers 96 through 99, inclusive, state claims in an undetermined amount. However, when the proof of claim forms were electronically filed, the e-filer entered $35,000,000.00 as the amount of each claim. The docket has since been

corrected by the court to state "$0" as the numerical entry for each of these claims, in order to be consistent with the "undetermined" amount stated on the proof of claim forms themselves. Instead of putting "$0" as the stated amount on this chart for this and other claims which stated "$0" on the claims register but "undetermined" or "unliquidated" on the face of the claim, the term "undetermined" or "unliquidated" as it appears on the proof of claim has been inserted on this chart.