

Signed and Filed: June 29, 2012

_____
**THOMAS E. CARLSON**
U.S. Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | Case No. 08-30991 TEC |
| WILLIAM JAMES DEL BIAGGIO, III, aka "BOOTS" DEL BIAGGIO, | Chapter 11 |
| Debtor. | |

### OPINION

The question presented is whether a creditor who obtains a partial recovery from a non-debtor co-obligor is required to reduce the claim asserted against the debtor in bankruptcy. I hold that the claim against the debtor is not reduced by the partial recovery, even if state law requires that the claim be reduced in a non-bankruptcy setting.

### FACTS

William Del Biaggio, III (Debtor) borrowed a total of $39.25 million from the six creditors whose claims are at issue here (Creditors). The loans were documented in promissory notes that Debtor represented would be secured by a pledge of shares of corporate stock held by Debtor at Merriman Curhan Ford & Co.

OPINION
-1-

(Merriman). Debtor provided the lenders copies of account statements from Merriman showing Debtor to be the owner of the shares.

In fact, Debtor did not own the shares pledged to secure the loans. At the behest of Debtor, D. Scott Cacchione, a Merriman employee, fabricated the account statements showing Debtor to be the owner of the shares. Creditors learned of the fraud when Debtor failed to repay the notes. Debtor and Cacchione were both convicted of securities fraud, were sentenced to prison, and were ordered to pay restitution.

Creditors sued Merriman, asserting that their losses resulted from Merriman's negligence in hiring and supervising Cacchione, and from Merriman's failure to maintain adequate controls.[1] The suit against Merriman was settled, with Merriman paying Creditors a total of $6.9 million.

Creditors filed claims in Debtor's bankruptcy case, seeking the full balance due on each of the notes without reduction for the amounts received from Merriman.

The Official Committee of Unsecured Creditors (the Committee) objected to Creditors' claims, contending that the amount of the claim that each Creditor may assert against Debtor's bankruptcy estate must be reduced by the amount the Creditor received from Merriman (the Reduction-of-Claim Approach). Creditors contend that the claims they assert in Debtor's bankruptcy case need not take account of payments from co-obligors, unless the dividend paid in

---

[1] Creditors sued Del Biaggio and Cacchione in the same action, but the action against those two individuals was stayed when they filed bankruptcy petitions.

**OPINION**

the bankruptcy case will result in a more than full recovery (the Limitation-of-Dividend Approach).

The Supreme Court addressed this question in <u>Ivanhoe Bldg. & Loan v. Orr</u>, 295 U.S. 243 (1935). In that case, the debtor owed the claimant $10,740. The claimant held an unsecured claim against the debtor. The claim was also secured by real property owned by a third party.[2] Prior to debtor's bankruptcy, the claimant had foreclosed upon the secured claim and had recovered $100 (the amount the claimant bid at the foreclosure sale). Debtor's bankruptcy trustee argued that debtor was entitled to offset the value of the real property collateral ($9,000), rather than the $100 bid for that property at the foreclosure sale. The bankruptcy court agreed with debtor's trustee, reducing the claimant's unsecured claim by the value of the real property collateral. The district court and court of appeals affirmed.

The Supreme Court reversed, holding: (1) debtor was entitled to a credit of only $100 (the amount recovered through the pre-petition foreclosure sale); (2) this credit would not reduce the unsecured claim in debtor's bankruptcy case unless the claimant would otherwise recover from all sources more than the full amount due. The court stated that the claimant could properly assert the proof of a claim "for the principal of the [debt] with interest, though the petitioner may not collect and retain dividends which with the sum realized from the foreclosure will more than make up that amount." <u>Id.</u> at 245-46.

---

[2] The debtor originally owned the property and executed a mortgage in favor of the claimant before transferring the property to the third party.

**OPINION**

The language quoted above is part of the holding of <u>Ivanhoe</u>, because it had an effect upon the size of the distribution that the bankruptcy court was directed to make to the creditor upon remand. The quoted language directed the bankruptcy court to allow the unsecured claim in the full amount of the debt owed the creditor. Adopting the reasonable assumption that the debtor's bankruptcy estate would not pay unsecured claims in full, the Court's directive caused the creditor to receive a larger dividend than if the creditor's unsecured claim had been reduced by the recovery from the third party.[3]

The language from <u>Ivanhoe</u> quoted above is also binding precedent under the current Bankruptcy Code. The Supreme Court has stated "[w]hen Congress amends the bankruptcy laws, it does not write 'on a clean slate.'" <u>Dewsnup v. Timm</u>, 502 U.S. 410, 419 (1992) (citations omitted). Congress is presumed to have enacted the Bankruptcy Code of 1978 with an understanding of the holding of <u>Ivanhoe</u>, and to have intended to incorporate that holding into the Code, unless the language of the Code or its legislative history clearly provides otherwise. <u>Id.</u> The Committee points to no provision in the Code that adopts a mechanism for accounting for payment by third parties different from that specified in <u>Ivanhoe</u>, nor to any statement in the legislative history indicating that Congress intended to overrule <u>Ivanhoe</u>.

The few decisions governed by the current Code that have addressed the question have followed the approach specified in <u>Ivanhoe</u>. The Fourth Circuit has stated "In <u>Ivanhoe</u>, the Supreme Court held that a creditor need not deduct from his claim in

---

[3] The dividend to unsecured creditors in the present case is projected to be 7 to 13 percent of allowed claims.

**OPINION**

-4-

bankruptcy an amount received from a non-debtor third party in partial satisfaction of an obligation." In re Nat'l. Energy & Gas Transmission, Inc., 492 F.3d 297, 301 (4th Cir. 2007).[4] Citing Ivanhoe, another court stated

> We start with the proposition that members of an unsecured creditors class may have rights to payment from third parties, such as joint obligors, sureties and guarantors, and these rights may entitle them to a disproportionate recovery compared to other creditors of the same class (up to a full recovery).

In re Journal Register Co., 407 B.R. 520, 533 (Bankr. S.D.N.Y. 2009). Accord Sec. Investor Protection Corp. v. Waddell Jenmar Sec., Inc. (In re Waddell Jenmar Sec., Inc.), 126 B.R. 935, 947 n.12 (Bankr. E.D.N.C. 1991) (no reduction of claim in bankruptcy for recovery from third party where no double recovery).

The Committee argues that Ivanhoe is not applicable, however, because state law governs the existence and amount of claims, and because California law specifies that a creditor's claim is reduced by any amount recovered from a co-obligor in respect of the same claim. This argument has an initial appeal. It is true that the claims asserted in bankruptcy cases are generally defined by non-bankruptcy law. Travelers Cas. & Sur. Co. of America v. Pac. Gas & Elec. Co., 127 S. Ct. 1199, 1205 (2007). It is also true that California law provides that payment by a co-obligor reduces the amount of the claim the creditor can assert. See, e.g., Cal. Civ. Proc. § 877; Brawley v. J.C. Interiors, Inc., 161 Cal. App. 4th 1126, 1133-34 (2008); May v. Miller, 228 Cal. App. 3d 404,

---

[4] The quoted statement may be *dictum*, because the court noted a second reason that the claim in bankruptcy should not be reduced by the amount of the third-party payment. The payment had been made by a surety, and under state law no offset could be claimed on the basis of a payment made by a surety. 492 F.3d at 301. The Nat'l. Energy & Gas decision is discussed further in note 7, below.

**OPINION**

-5-

409-10 (1991); Syverson v. Heitmann, 171 Cal. App. 3d 106, 110-11 (1985).

I conclude that the Reduction-of-Claim Approach utilized by California courts outside of bankruptcy does not require this court to depart from the Limitation-on-Dividend Approach adopted in Ivanhoe for use in bankruptcy cases. This is so for the following reasons.

First, Ivanhoe adopts a rule to deal with the situation in which the defendant co-obligor is in bankruptcy and cannot pay his debts in full. Ivanhoe makes a choice as to how the claim of a creditor will be treated in bankruptcy proceedings if that creditor receives partial payment from a co-obligor of the debtor. Ivanhoe decides that the amount the creditor's claim in the bankruptcy case is not affected by third-party payments, except to the extent payment from the debtor would produce a double recovery. Ivanhoe thus chooses to value equality of treatment by the debtor's estate above equality of overall outcomes among creditors having different rights against third parties.[5] This choice is at heart a question of federal bankruptcy law.

Second, the choice between the Reduction-of-Claim Approach and the Ivanhoe Limitation-of-Dividend Approach matters only when the defendant co-obligor is in bankruptcy. If the defendant co-obligor

---

[5] Debtor argues that the Ivanhoe Limitation-of-Dividend Approach violates the policy of the Bankruptcy Code that requires creditors to be treated equally, citing Union Bank v. Wolas, 502 U.S. 151 (1991). Wolas does not support the Committee's argument, because it cites the equality-of-distribution policy to explain the preference statute, which seeks to equalize distribution made *by the debtor*. The question presented here is whether that rule of equal distribution by the debtor's estate should be abandoned when a creditor can obtain a partial recovery from *a third party*. Ivanhoe says no, and thereby furthers the concept of equality of treatment by debtor described in Wolas.

**OPINION**

is solvent, the Reduction-of-Claim Approach does not prevent the plaintiff from obtaining a full recovery. But if the defendant co-obligor is in bankruptcy and cannot pay his claims in full, the choice effects the dividend the creditor will receive from the bankruptcy estate. This effect is illustrated in the following table.

|  | Defendant Solvent, Does Not File Bankruptcy | | Defendant Files Bankruptcy, Pays 50 Percent Dividend | |
| --- | --- | --- | --- | --- |
| Rule | Reduction-of-Claim | Limitation-of-Dividend | Reduction-of-Claim | Limitation-of-Dividend |
| Amount of Joint Debt | 100 | 100 | 100 | 100 |
| Payment by Co-obligor | 30 | 30 | 30 | 30 |
| Remaining Claim | 70 | 100 | 70 | 100 |
| Payment by Defendant | 70 | 70* | 35 | 50 |
| Creditor's Total Recovery | 100 | 100 | 65 | 80 |

* Limited to 70 because creditor may not obtain double recovery

Third, the California authorities utilizing the Reduction-of-Claim Approach do not explain why that mechanism is to be preferred when the defendant co-obligor is insolvent and in bankruptcy.[6]

---

[6] It is unlikely that the Reduction-of-Claim Approach would produce a result different from the Limitation-of-Damages Approach even if the defendant was insolvent, so long as the defendant did not file bankruptcy. This is so because the plaintiff would have access to *all* of the defendant's non-exempt, unencumbered property until the debt was satisfied. If the debt was not paid in full, it would be because the defendant's assets were insufficient, not

**OPINION**

-7-

Those authorities do not even mention insolvency, and seem tacitly to assume that the defendant co-obligor will pay the full amount of any judgment entered, thereby providing the plaintiff a full recovery. Thus, the California authorities do not even purport to address the question presented here.

Fourth, the choice between the Reduction-of-Claim Approach and the <u>Ivanhoe</u> Limitation-of-Dividend Approach does not involve general and basic rules regarding contractual and non-contractual liability or property rights under state law. Rather, the present choice involves only how claim payments are calculated where the defendant is insolvent and in bankruptcy. Although Congress generally refers to state law to determine the existence and amount of a claim, Congress has broad power to modify the rights of unsecured creditors, and the Committee cites no authority that suggests that Congress did not or could not adopt the <u>Ivanhoe</u> rule for calculating dividends to be paid by bankruptcy estates.[7] The only state policy or interest identified in the California cases adopting the Reduction-of-Claim Approach is that the plaintiff should not obtain a double recovery. <u>Brawley</u>, 161 Cal. App. 4th at

---

because the claim had been reduced by payments from a co-obligor. It is only upon the filing of a bankruptcy, which forces the plaintiff to share the assets of the insolvent defendant with other creditors, that the reduction of the claim makes a difference.

[7] The decision in <u>Nat'l. Energy & Gas</u> appears to rely on state law to determine whether a creditor's claim in bankruptcy should be reduced to account for a payment made by a co-obligor. 492 F.3d at 301. The state law the court cited provided that a debt not be reduced by any amount paid by a surety. <u>Id.</u> In providing that the claim not be reduced, state law did not conflict with <u>Ivanhoe</u>, and the <u>Nat'l. Energy & Gas</u> decision therefore does not suggest that state law can overcome <u>Ivanhoe's</u> determination that in bankruptcy the policy of equality of distribution from the debtor is to prevail over concern for equalizing creditor's recovery from all sources. The court had previously held that <u>Ivanhoe</u> governed, and its discussion of state law is at most an alternative holding. <u>Id.</u>

**OPINION**

-8-

1135; May v. Miller, 228 Cal. App. 3d at 410.  The Ivanhoe Limitation-of-Dividend Approach furthers that goal every bit as reliably as the Reduction-of-Claim Approach.

In light of the four factors described above, I determine that the California Reduction-of-Claim Approach is not intended to apply to claims asserted in a federal bankruptcy case, and that Ivanhoe states a rule of federal bankruptcy law that must prevail over any contrary state law.[8]

CONCLUSION

The Committee's limited objection to Creditors' claims are overruled.  The amount of those claims need not be reduced by the amounts received from co-obligor Merriman unless Creditors would otherwise reap a double recovery.

**\*\*END OF OPINION\*\***

---

[8] In response to the Committee's objection to their claims, Creditors raised several arguments that do not depend upon Ivanhoe prevailing over contrary state law.  Those arguments include the following: (1) that the California statutes and decisions that the Committee relies upon do not apply because the promissory notes are governed by the laws of other states; (2) that the California statutes and decisions do not require payments made by a joint tort feasor to be offset against their breach-of-contract claim against Debtor; and (3) Debtor waived all setoff rights.  In light of my determination that Ivanhoe governs, it is not necessary to address Creditors' other arguments.